■ In the Matter of Thomas A. Maul, as Director of the Bureau of

Resident Resources of the New York State Office of Mental Retardation and Developmental Disabilities, Appellant, v MILDRED FITZGERALD et al., Respondents.—Appeal from a decree of the Surrogate's Court of Warren County, entered December 17, 1979, which denied petitioner's application to compel the trustees under the last will and testament of Edward J. Fitzgerald to invade a testamentary trust for the purpose of paying it to the State of New York in partial payment of care rendered to Robert H. Fitzgerald, the testator's son and the life beneficiary of the trust. By will dated February 20, 1962, the testator, a physician and health officer of the City of Glens Falls, established a trust, with a corpus of $5,000 for the benefit of his mentally retarded son, Robert. The testator died July 1, 1969 and his will was admitted to probate July 22, 1969. The paragraph of the will governing the trust provides: "I give and bequeath to my Trustees, the sum of Five Thousand ($5000.00) Dollars, IN TRUST NEVERTHELESS, to invest and reinvest the same * * * as in their personal good judgment may be suitable for such investment, and without being limited to the class of investments legal by law for the investment of trust funds, and to use the net income therefrom, and such part of the principal thereof as in their personal good judgment and discretion may be necessary for the proper care, support and maintenance of my son, ROBERT H. FITZGERALD, for and during the term of his natural life and upon his death whatever part of said trust fund shall remain at that time undisposed of I give, devise and bequeath to my wife, MILDRED FITZGERALD, my daughter, MAUREEN FITZGERALD, and my son, WILLIAM E. FITZGERALD, or such of them as may then be living, share and share alike. The decision of my Trustees as to the desirability of any use of principal for the needs of my son, ROBERT H. FITZGERALD, shall be binding and conclusive upon all persons interested in this trust and shall not be subject to review. Upon making any such payments my Trustees shall be fully released and discharged from any further liability or accountability therefor." On February 28, 1954, at the age of 22 years, the son was admitted to Marcy State Hospital on court certification and has remained under the care and custody of the New York State Department of Mental Hygiene ever since. The testator was, therefore, fully aware of his condition at the time he made his will. Presently, the son is a resident patient at the Wilton Development Center, with no release contemplated in the immediate future. The expenses of his care and treatment amount to $2,925 per month and his only source of income is from Social Security in the amount of $252.30 per month. By order to show cause returnable September 19, 1979 in the Surrogate's Court of Warren County, the petitioner sought a decree under EPTL 7-1.6 (subd [b]) compelling the testamentary trustees, Mildred and John E. Fitzgerald, to invade the trust, which now totals about $6,600, and pay it to the State of New York to satisfy, in part, its claim of $15,903.07 for the care and treatment of Robert at Wilton Development Center for the period from January 1, 1977 through May 1, 1979. The application was denied by the Warren County Surrogate. This appeal attacks the validity of the denial decree. In urging reversal the petitioner relies on subdivision (a) of section 43.03 of the Mental Hygiene Law which provides, inter alia, that any fiduciary holding assets for a patient is liable to the State for fees for services rendered to said patient. Subdivision (b) provides that the commissioner may reduce or waive fees in cases of inability to pay. Before an application under section 43.03 can be considered, however, a determination must first be made as to whether the trust moneys constitute an asset of Robert, the trust beneficiary. Inasmuch as the trustees have refused to exercise their discretionary powers of invasion

given them under the trust provisions of the will, the trust moneys, both principal and accumulations, are not an asset of the beneficiary unless the Surrogate, in the exercise of his statutory discretion, erred in refusing to compel the invasion by the trustees for the purpose applied for by the petitioner (EPTL 7-1.6, subd [b]). This section expressly provides that the court, "may in its discretion make an allowance from principal to any income beneficiary whose support or education is not sufficiently provided for, whether or not such a person is entitled to the principal of the trust or any part thereof; provided that the court, after a hearing on notice to all those beneficially interested in the trust in such manner as the court may direct, is satisfied that the original purpose of the creator of the trust cannot be carried out and that such allowance effectuates the intention of the creator." The commentary (Rohan, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 7-1.6, 1979-1980 Cumulative Supp, p 71), states that the section must be interpreted as a form of cy pres doctrine for private trusts and that the decisive question (where as here the instrument itself makes no provision to the contrary) is " 'would the settlor have approved of this corpus invasion had he thought about it, although we are fairly certain he did not think about it.' " (See, also, *Matter of Ross,* 96 Misc 2d 463.) While the express purpose of this trust may not be said to prohibit invasion in appropriate circumstances, it is equally clear that the testator himself would not approve the present invasion requested if he thought about it. The testator knew the mental condition of his son at the time he executed the will and elected to leave him the beneficiary of a small trust, rather than an outright gift. As a physician and health officer, the testator was familiar with mental hygiene and social services. The amount of the trust, including its accumulations, is presently only $6,600 and would hardly pay one half of the petitioner's present claim of $15,903.07. Even if such payment were to be made, it would not change in the slightest the beneficiary's condition or situation. His care and treatment would be required to continue in the same manner and in the same institution at the same astronomically spiraling cost to the State. The payment, if made, would be only a proverbial drop in the bucket of the already incurred and future costs of services with no appreciable benefit to the petitioner and to the deprivation of the beneficiary of any of life's "extras". If the testator were aware of these facts as they now exist, it would be a divorce from the reality of life to presume that he would intend the amount of the trust to be paid to the petitioner in preference to having society share the burden *(Matter of Escher,* 94 Misc 2d 952, affd 75 AD2d 531), especially since the testator, if living, would have no obligation to support the beneficiary, an adult child (Domestic Relations Law, § 32, subd 2; Social Services Law, § 101, subd 1; Family Ct Act, § 413). There is no authority to justify impressing on a testamentary trust a greater obligation than the testator himself would have, if he were alive *(Matter of Escher, supra,* p 960). Accordingly, the Surrogate was correct in denying the petitioner's request and this being so, there is no asset that accrued to the beneficiary that would be subject to an application under section 43.03 of the Mental Hygiene Law. Decree affirmed, with costs. Mahoney, P. J., Sweeney, Kane, Casey and Herlihy, JJ., concur.