In the Matter of SHIRLEY HOELZER, as Guardian ad Litem of NORMA REICHENBACHER, Petitioner, v BARBARA BLUM, as Commissioner of New York State Department of Social Services, et al., Respondents.

Second Department, May 23, 1983

APPEARANCES OF COUNSEL

*Molloy, Fletcher, Dunne & Sibell, P. C. (John P. Dunne* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Frederic L. Lieberman* and *Maryellen Weinberg* of counsel), for State Commissioner, respondent.

NIEHOFF, J.

In this matter we are called upon to answer the following questions:

1. Should the petitioner, the trustee of a trust for the benefit of her sister, Norma Reichenbacher, a patient at the Montclair Nursing Home, be required to apply to the court for permission to invade the $60,000 trust corpus in order to pay for the care of Norma?

2. Did petitioner abuse her discretion by refusing to invade the $60,000 trust corpus in order to pay for the care of Norma?

3. Was the trust corpus an available resource under the Social Services Law for medical assistance eligibility purposes?

The State commissioner, after a hearing, determined that the current need of Norma Reichenbacher for medical assistance, together with insufficient income from the trust to meet the medical needs, constituted an emergency and, thus, it was an abuse of discretion for the trustee, petitioner Shirley Hoelzer, not to invade the corpus of the trust for purposes of making payments to the Montclair Nursing Home. For reasons which follow, we annul said determination.

Florence and David Reichenbacher gave birth to three daughters. Shirley Hoelzer, the petitioner herein, one of the daughters, is the guardian ad litem of her sister, Norma Reichenbacher. Norma has been mentally retarded, blind and deaf since shortly after her birth on December 14, 1921, and she lived with both of her parents until her father's death in 1965, at which time she continued to live with her mother until her mother died in October, 1980. In November, 1980, Norma was moved to the Montclair Nursing Home in Glen Cove, New York, where she presently lives.

When David Reichenbacher died on August 13, 1965, he left a will dated November 12, 1957. In said will he created a marital deduction trust in favor of his wife, whereby she was made income beneficiary for life, or until she remarried, of her husband's residuary estate. Florence Reichen-

bacher died without remarrying. Upon the death of Florence Reichenbacher, David Reichenbacher's will directed that the then principal of the trust be equally divided amongst his surviving children and paid "to each of my children or their issue, other than my daughter, NORMA REICHENBACHER". As to Norma Reichenbacher's share the will directed:

"(2) To set apart and hold one equal part as a separate trust fund for my daughter, NORMA REICHENBACHER, and to hold, manage and invest such trust fund and to collect the income therefrom and I direct my Trustee to apply the following instructions to such trust fund:

"TERM OF TRUST — My trustee shall continue such trust during the lifetime of my daughter, NORMA REICHENBACHER.

"DISPOSITION OF TRUST — The net income shall be applied to the support and maintenance of my daughter, NORMA REICHENBACHER, until the termination of the trust.

"DISPOSITION OF PRINCIPAL — Except as hereinafter otherwise provided, the Trustee shall retain the principal of such trust until its termination and shall distribute the trust principal as follows:

"(1) If the trust is terminated by reason of the death of the child for whom it was created, the trust principal and undistributed income shall be distributed outright to my issue including any issue of any deceased child of mine, per stirpes.

"(2) Notwithstanding anything hereinabove contained to the contrary, if at any time which this trust is in force any emergency arises in the affairs of the child to whom the trust pertains by reason of sickness, accident or other unusual circumstances, the trust corpus may be used or applied in the Trustee's discretion in such amount or amounts as may be required by or for the benefit of such child by reason of such emergency."

Shirley Hoelzer was designated by her father to be executrix of the will and trustee of the trusts created by the will. In the "SEVENTH" paragraph of the will, David Reichenbacher made the following direction: "I direct that my Executrix and trustee, hereinabove named, to investigate

and find a suitable home for the care and maintenance of my invalid daughter, NORMA REICHENBACHER during her lifetime. I further authorize and direct my trustee herein to make all payments of income from the trust hereinabove provided for the benefit of my daughter NORMA REICHENBACHER to the person in charge of said home, without the necessity of any prior application to any court in this State or elsewhere."

The assets in the trust are valued at approximately $60,000 and currently yield between $2,000 and $3,000 in annual income, which has continually been used to support Norma Reichenbacher.

Shortly before her death, Florence Reichenbacher, the mother, became hospitalized and it became obvious to Shirley Hoelzer that her mother would no longer be able to care for Norma. As a result, on September 8, 1980 Shirley Hoelzer made application to the Nassau County Department of Social Services for medical assistance benefits on behalf of her sister. On December 12, 1980, after obtaining some documents from Shirley Hoelzer, the Nassau County Department of Social Services denied the application for medical assistance on the grounds, *inter alia,* that the corpus of the trust, valued at approximately $60,000, constituted a resource in excess of the allowable standards for medical assistance.

On October 16, 1981 a fair hearing was held and by decision dated November 12, 1981 the State Commissioner of Social Services upheld the Nassau County Department of Social Services denial of the medical assistance application. The decision after fair hearing noted that the corpus of the trust for the benefit of Norma Reichenbacher exceeded the allowable exemption ($2,350); that the "excess resources may be available for the payment of medical expenses"; that "[u]ntil a bona fide effort has been made on behalf of [Norma Reichenbacher] to seek an invasion of the corpus of the trust created for her benefit, she may not be considered a person who requires Medical Assistance"; and that Norma Reichenbacher's "current need for Medical Assistance and insufficient income to meet her medical needs" constituted an emergency which justified invasion of the trust corpus for her benefit thereby making Norma

ineligible for medical assistance. Finally, the decision granted Norma Reichenbacher leave to reapply for medical assistance in the event of a change in circumstances "such as a liquidation in the assets of the trust or a bona fide effort made to obtain the principal of the trust for her maintenance and care".

Thereafter, the petitioner commenced the instant CPLR article 78 proceeding which has been transferred to this court pursuant to CPLR 7803 (subd 4) and CPLR 7804 (subd [g]).

We conclude that the State commissioner erred when she upheld the denial of the application submitted on behalf of Norma Reichenbacher upon the ground that Norma may not be considered a person who requires medical assistance until a bona fide effort had been made to seek invasion of the corpus of the testamentary trust created for Norma by her late father.

The State commissioner found that it was incumbent upon the trustee to attempt to invade the trust corpus for two reasons: (1) because resources in excess of the allowable statutory exemption may have been available for the payment of Norma's medical expenses and (2) because Norma's needs constituted an emergency under the SECOND paragraph of David Reichenbacher's will. Hereinafter, we shall discuss the reasons separately in order to show why we are persuaded that they do not compel an invasion of the trust *res*.

Initially, we note that the burden of proof for establishing eligibility for medical assistance is on the applicant (*Matter of Moffett v Blum*, 74 AD2d 625; *Matter of Sherman v Sanfilippo*, 74 AD2d 675) and that the regulations for the medical assistance program require applicants and recipients to "utilize available resources and to apply for and otherwise pursue potentially available resources" (18 NYCRR 352.23 [a]; 18 NYCRR 360.4 [a]).

Manifestly, the corpus of the testamentary trust is not a resource currently available to Norma Reichenbacher. Thus, our inquiry must be directed at whether or not a viable remedy exists whereby Norma or someone on her behalf can "apply for and otherwise pursue" this potential

resource. If, on the record before us, such a remedy exists then the trust corpus can be construed as a potentially available resource. If, on the other hand, no such vehicle exists then the corpus must be deemed unavailable to Norma Reichenbacher for medical assistance purposes.

EPTL 7-1.6, entitled "Application of principal to income beneficiary", empowers our courts to invade a trust corpus for the maintenance, support or education of an income beneficiary, absent such authority in the instrument. Prior to the enactment of the statute, courts were powerless to invade the corpus of a testamentary trust (*Matter of Sullard,* 247 App Div 761).

The statute empowers a court, under certain circumstances, to utilize trust principal and requires any allowance made to be charged upon the share of the income beneficiary in the event he receives a portion of the trust principal (EPTL 7-1.6, subd [c]). The statute reads, in part, as follows:

"§ 7-1.6 Application of principal to income beneficiary

"(a) Notwithstanding any contrary provision of law, the court having jurisdiction of an express trust, heretofore created or declared, to receive the income from property and apply it to the use of or pay it to any person, unless otherwise provided in the disposing instrument, may in its discretion make an allowance from principal to any income beneficiary whose support or education is not sufficiently provided for, to the extent that such beneficiary is indefeasibly entitled to the principal of the trust or any part thereof or, in case the income beneficiary is not entitled to the principal of the trust or any part thereof, to the extent that all persons beneficially interested in the trust are adult and competent and consent thereto in writing; provided that the court, after a hearing on notice to all those beneficially interested in the trust in such manner as the court may direct, is satisfied that the original purpose of the creator of the trust cannot be carried out and that such allowance effectuates the intention of the creator.

"(b) Notwithstanding any contrary provision of law, the court having jurisdiction of an express trust, hereafter created or declared, to receive income from property and

apply it to the use of or pay it to any person, unless otherwise provided in the disposing instrument, may in its discretion make an allowance from principal to any income beneficiary whose support or education is not sufficiently provided for, whether or not such person is entitled to the principal of the trust or any part thereof; provided that the court, after a hearing on notice to all those beneficially interested in the trust in such manner as the court may direct, is satisfied that the original purpose of the creator of the trust cannot be carried out and that such allowance effectuates the intention of the creator."

Under subdivision (b), the broader of the two subdivisions, an allowance from trust principal for an income beneficiary's support can be made if it is not sufficiently provided for, with or without the written consent of the trust beneficiaries. However that may be, EPTL 7-1.6 (subd [b]) is limited to trusts created or declared after June 1, 1966 (see Rohan, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 7-1.6, p 82, 1982-1983 Pocket Part; *Matter of Damon,* 71 AD2d 916; *Matter of Escher,* 94 Misc 2d 952, affd 75 AD2d 531, affd 52 NY2d 1006). Since David Reichenbacher's testamentary trust was created prior to June 1, 1966, our courts are powerless to employ EPTL 7-1.6 (subd [b]) to the corpus of the subject trust and any application to utilize the principal of that trust for Norma's behalf would necessarily have to be made pursuant to EPTL 7-1.6 (subd [a]).

EPTL 7-1.6 (subd [a]) is to be contrasted with subdivision (b) thereof in that it is applicable to all instruments without regard to their effective dates. Subdivision (a) authorizes a court after a hearing on notice to all interested parties to make an allowance from principal to an income beneficiary for the latter's education or support if the court finds that the income beneficiary's education or support is not sufficiently provided for. Where the income beneficiary is indefeasibly entitled to the principal of the trust, not applicable here, the court may invade the corpus to the extent of the income beneficiary's share. Where the income beneficiary is entitled to no part of the trust corpus, the court may invade the principal of the trust to the extent that "all persons beneficially interested in the trust are

adult and competent and consent thereto in writing". If anything is clear from this record it is the fact that Norma Reichenbacher's sisters, the trust beneficiaries, are not prepared to consent to an invasion of the trust corpus to any extent whatsoever. That being so, it follows that our courts are without the power to convert the trust corpus into an "available resource" of Norma Reichenbacher for eligibility purposes. Consequently, the trustee cannot be faulted for not applying to the Surrogate for an order of that court invading the principal of the trust set up for Norma and it was unreasonable for the State commissioner to condition any future application for medical assistance on "a bona fide effort * * * to obtain the principal of the trust for [Norma's] maintenance and care".

We turn then to the issue of whether Norma's current need for medical assistance and insufficient income to meet her medical needs constitutes an emergency by reason of sickness mandating invasion of the trust corpus.

Under the SECOND paragraph of the will, "the trust corpus may be used or applied *in the Trustee's discretion* in such amount or amounts as may be required by or for the benefit of such child by reason of such emergency" (emphasis added).

As a general rule the courts of this State will respect and not interfere with a trustee's decision unless it can be shown that the decision constituted an abuse of the discretion given the trustee by the testator or testatrix (*Matter of Oddo v Blum,* 83 AD2d 868; *Matter of Damon,* 71 AD2d 916, *supra;* see, also, *Matter of Escher,* 52 NY2d 1006, *supra*).

In *Matter of Oddo v Blum* (*supra,* p 868), where the trustee refused to invade the principal even though she was authorized to invade it when "necessary and proper" for the benefit of her sister who was an income beneficiary of the trust, our court wrote: "It is not clear whether the testatrix, if aware of the present facts, would desire to pay the immense cost of her sister's care, in preference to having society share the burden (see *Matter of Escher,* 94 Misc 2d 952, affd 75 AD2d 531 [affd 52 NY2d 1006]; *Matter of Maul v Fitzgerald,* 78 AD2d 706). Accordingly, we decline to overturn the trustee's decision."

Manifestly, in determining whether a trustee has abused his or her discretion it is necessary to seek out the intent of the testator, as reflected in the language of the instrument creating the trust. In making a determination as to the intent of the testator, "[t]he terms of the instrument must be reviewed in the light of the obvious knowledge, at the time of execution, which the testator had with reference to the disabilities of the life income beneficiary" (*Matter of Escher,* 94 Misc 2d 952, 957, *supra*) and it is the intent of the testator as reflected in the will and the context in which the instrument was drawn which must govern (*Matter of Upjohn,* 304 NY 366). In the case at bar, it cannot be said that Shirley Hoelzer's refusal to consent to the invasion of the trust corpus for the care of her sister in a nursing home was contrary to the intent of her father the testator or constituted an abuse of discretion.

Although Norma was not institutionalized at the time her father created the trust, the provisions made for her as life beneficiary disclose a clear recognition on David Reichenbacher's part that Norma would never be self-supporting or capable of handling her own affairs. Indeed, he envisaged her placement in a home, for in the SEVENTH paragraph of his will he wrote: "I direct * * * my * * * trustee * * * to investigate and find a suitable home for the care and maintenance of my invalid daughter, NORMA REICHENBACHER during her lifetime. I further authorize and direct my trustee * * * to make all payments of income from the trust hereinabove provided for the benefit of my daughter NORMA REICHENBACHER to the person in charge of said home". Nevertheless, he did not state that in the event the income was insufficient to pay for the cost of Norma's maintenance and care in the home the trustee should invade the principal of the trust. Rather, he declared that the emergency provision was to pertain to "sickness, accident or other unusual circumstances". In view of the fact that Norma had been disabled since birth and had been cared for by her father and mother in the family home for approximately 44 years prior to his death in 1965, and that he made specific provision for her to be placed in a home with the income from the trust to go to the home, it can hardly be said that it is clear that he intended nursing

home care for her ongoing disability to be an emergency "sickness * * * or other unusual [circumstance]" requiring invasion of the trust corpus or that Norma's entry into a nursing home would, in and of itself, give rise to an emergency situation.

On the contrary, the trustee was justified in concluding that one of the purposes in David Reichenbacher's establishing this testamentary trust was to provide for invasion of the corpus in the event that Norma was confronted with an unforeseen combination of circumstances, i.e., an "emergency", and was not guilty of an abuse of discretion in determining that Mr. Reichenbacher, if aware of the present facts, would not have desired to pay the immense cost of Norma's care, in preference to having society share the burden (see *Matter of Escher, supra*).

That being so, in sum we hold that inasmuch as (1) any "bona fide" attempt to declare the subject trust corpus an asset available to Norma Reichenbacher for medical assistance purposes would be a hopeless gesture and (2) the petitioner trustee did not abuse the discretion given her by the testator in refusing to declare the increased costs associated with Norma's nursing home care as an emergency, the trust corpus was not an available resource for medical assistance eligibility purposes, the State commissioner's determination should be annulled, and the Department of Social Services directed to pay the medical assistance benefits owing on behalf of Norma Reichenbacher, retroactive to September 8, 1980.

LAZER, J. P., GIBBONS and BOYERS, JJ., concur.

Petition granted, determination of the respondent State Commissioner of Social Services, dated November 12, 1981, annulled, on the law, without costs or disbursements, petitioner's application for medical assistance on behalf of her sister Norma Reichenbacher granted, and respondents are directed to pay the medical assistance benefits owing on behalf of Norma Reichenbacher, retroactive to September 8, 1980.