OPINION OF THE COURT
Eve Preminger, S.
These are two independent applications, decided together, concerning inter vivos trusts for beneficiaries with long-term disabilities. All of the trusts involved were created before supplemental needs trusts were specifically authorized either by case law or by statute. In each of the proceedings, petitioners ask for reformation to conform the instruments’ terms to the statutory requirements for supplemental needs trusts, in order to establish or maintain eligibility of the respective beneficiaries for government benefits necessary for their care.
The requested reformations would have the additional effect of diverting the value of the government benefits to the settlors’ other descendants on the death of the disabled beneficiary.
Petitioners in the first case are cotrustees of a 1972 inter vivos trust created by Sylvia Rubin for the benefit of her granddaughter, Linda Rubin. Linda Rubin, 52 years old, is severely disabled with cognitive and physical impairments. Under the current provisions of her trust all of the income is payable to Ms. Rubin for her lifetime. On her death, the principal will pass outright to Ms. Rubin’s siblings or their issue. There is no provision for invasion of principal.
The income from the trust disqualifies Ms. Rubin from receiving certain needs-based benefits from the federal government as well as from the State of California where she resides. Nonetheless, the trust income is no longer sufficient to provide her with appropriate medical care and supervision, the cost of which has increased substantially in recent years. Petitioners urge the court to reform the trust to require distribution of Ms. Rubin’s income to a new trust, created by her father, that would qualify her for benefits under California and federal law by limiting the amounts payable to Ms. Rubin; any property remaining at her death would pass to her siblings free from the claims of credi *636 tors. The affected government agencies in California have consented to the requested relief. The Social Security Administration, also an interested party, has not opposed the application in this court.
The second case concerns three trusts created by Katharine Mortimer over a period of 19 years. Her daughter, Katharine Blaine, was the life income beneficiary of a share of the 1945 trust and of the entire 1959 trust; she was a discretionary income and principal beneficiary, with her descendants, of the 1964 trust. Katharine Blaine died 11 days after the petition herein was filed. As a result of her death, all three trusts have terminated and the principal from her respective shares is distributable outright to her surviving issue. One of Katharine Blaine’s five children, Alston Shields, is a developmentally disabled 53 year old who receives government benefits that pay for all his needs, including the cost of the assisted living facility where he has resided since 1992.
Mr. Shields’s inheritance from the three trusts amounts to approximately $900,000. If he were to receive the funds outright, he would no longer qualify for the Medicaid benefits on which he depends for his support. Paradoxically, the facility where he has resided for the past 14 years cannot guarantee that he could remain if his inheritance were applied to the cost of his care.[1] Even if Mr. Shields were to undergo the disruption of moving to a different residence, it is possible that after depletion of his inheritance there would be no room for him at a facility that provides as high a level of care as he now receives.
Petitioners are the trustees of the Mortimer trusts. They request, first, that the trusts be divided to sever Mr. Shields’s interest from those of his siblings and, second, to reform Mr. Shields’s trusts to provide that his shares be held in continuing supplemental needs trusts instead of distributed to him outright. The terms as proposed by petitioners call for the remainder of his shares to be distributed upon his death to the issue of Katharine Blaine, that is, to Mr. Shields’s siblings or their issue.
The New York State Office of Mental Retardation and Developmental Disability (Department), which administers Mr. Shields’s Medicaid benefits, was cited and did not appear in this proceeding. At the request of the court the guardian ad litem *637 for Mr. Shields discussed the matter with the Department; he reports they have no objection to the requested reformation.
In both proceedings, petitioners contend that the settlors’ intent to provide for their disabled grandchildren cannot be carried out under the terms of the trusts they created. In the case of Ms. Rubin, her trustees show that the full extent of the disability and the cost of her future care were not known or anticipated in 1972 when the trust was established. In the case of Mr. Shields, the first trust was created before he was born. The other trusts were created when he was 8 and 13 years old, respectively. It was apparent shortly after his birth that he was not an entirely healthy child, and he was placed in a residential treatment center at the age of 21h years. His care was largely paid for by Mrs. Mortimer, who petitioners believe made no special arrangement for him in the various trusts she created for the family because she hoped her grandson would “grow out of his problems.” When Mrs. Mortimer made her will in 1970, Mr. Shields was 20 years old and was found that same year to have an IQ below 30. The 1970 will makes no provision for Mr. Shields, although there are numerous outright bequests to other grandchildren. Petitioners assert that these facts taken together are evidence Mrs. Mortimer wanted to provide for her grandson, but would not have wanted him to receive an outright inheritance.
In both proceedings, petitioners observe that when the various trusts were created it was not clear that supplemental needs trusts were lawful. It was not until 1978, when Surrogate Gelfand issued his decision in Matter of Escher (94 Misc 2d 952 [1978], affd sub nom. Matter of Gross, 75 AD2d 531 [1980], affd 52 NY2d 1006 [1981]), that the validity of such trusts was expressly recognized. Before then, “[t]he cases presume[d] that a person would prefer paying for the needs of those dear to him in lieu of welfare contributing thereto” (94 Misc 2d 952, 959 [1978]). Furthermore, it was not until 1993 that EPTL 7-1.12 was enacted, providing statutory authority for the creation of supplemental needs trusts. In these circumstances, petitioners argue that this court should permit reformation of the interests of the disabled beneficiaries to place the inherited assets they would otherwise receive outright into supplemented needs trusts deemed settled by their respective grandmothers.
Reformation is generally available to correct mistakes in inter vivos instruments so that the written instrument accurately expresses the settlor’s actual intent. As this court noted, *638 however, in Matter of Dickinson v Bates (NYLJ, Aug. 4, 1999, at 22, col 6, affd 273 AD2d 89 [2000]), reformation may not be used to change the terms of a trust to effectuate what the settlor would have done had the settlor foreseen a change of circumstances that has occurred. Even the Restatement of Property, which adopts a more expansive view of reformation than now recognized in New York, would not support granting this remedy on the facts of the present cases {see Restatement [Third] of Property: Donative Transfers § 12.1, Comment h [reformation is unavailable to modify a document in order to compensate for changes in circumstances]).
To reform the trusts in the manner requested would stretch the doctrine of reformation beyond recognition. Moreover, such a stretch would deviate from the policy animating reformation. The Restatement (Third) of Property states:
“Equity rests the rationale for reformation on two related grounds: giving effect to the donor’s intention and preventing unjust enrichment. The claim of an unintended taker is an unjust claim. Using the equitable remedy of reformation to correct a mistake is necessary to prevent unjustly enriching the mistaken beneficiary at the expense of the intended beneficiary” (Restatement [Third] of Property: Donative Transfers § 12.1, Comment b).
The claim for reimbursement by the federal and state agencies that exist to support the elderly and infirm is the antithesis of unjust (cf. EPTL 7-3.1 [expressing public policy prohibiting an individual from placing assets in trust to avoid creditors]). Certainly a donor may establish a trust for another to avoid the claims of these agencies (EPTL 7-1.12), and just as certainly an ambiguous trust may be construed to effectuate an intent to avoid such claims (Matter of Escher, supra). Neither of those well-established principles, however, requires or suggests that courts ought to alter an unambiguous instrument to achieve outcomes never expressed by the creator of the instrument. Imputing intent in this way would substitute the judiciary’s value system for that of the donor, which sometimes may accord with the creator’s wishes but just as frequently may defy them (see generally Champine, My Will Be Done: Accommodating the Erring and the Atypical Testator, 80 Neb L Rev 387 [2001]). This the court declines to do.
Petitioners further argue that the trusts should be reformed by resort to the doctrine of equitable deviation. The doctrine is *639 applied where there has been a change in circumstances unforeseen by the settlor, and adherence to the trust terms would defeat or substantially impair the purpose of the trust. The doctrine is sparingly used and its application has, with few exceptions, been limited to the alteration of administrative provisions or to the relaxation of investment strictures that jeopardize the trust principal (e.g. Matter of Young, 178 Misc 378 [1942] [trustee relieved from obligation to invest in certain bonds not currently available]; Matter of Pulitzer, 139 Misc 575 [1931], affd 237 App Div 808 [1932] [trustee relieved from obligation to retain stock that became unproductive]; see generally 11-188 Warren’s Heaton, Surrogates’ Courts § 188.07 [2003]).
The only published case dealing with the doctrine of equitable deviation in the context of the cases at bar is Matter of Ciraolo (NYLJ, Feb. 9, 2001, at 31, col 4), where Surrogate Feinberg permitted the reformation of a testamentary trust to place the remainder interest of a disabled beneficiary into a supplemental needs trust. Although the decision relies on the presumed intent of the testator, it also emphasizes that the revision did not alter the testamentary scheme and did not change the interest of any beneficiary. Such is not the case in the present applications. The reformations as requested would increase the shares of the siblings of the disabled beneficiaries at the expense of creditors, particularly the state and federal governments that supply the medical benefits petitioners want to preserve.
Even if equitable deviation were otherwise appropriate, a prerequisite for allowing deviation from the trust terms is lacking in the present cases: petitioners have not shown that the settlors’ presumed intent is incapable of fulfillment under the trusts as drafted. The inheritance of each beneficiary may be placed in a “self-settled” supplemental needs trust, made possible by the enactment in 1993 of the federal Omnibus Budget Reconciliation Act, known as OBRA ‘93. This act permits the transfer of assets of a disabled person under the age of 65 to a trust that supplements but does not supplant Medicaid benefits, without the trust assets being considered a disqualifying resource. New York thereafter amended EPTL 7-1.12 and related statutes, including Social Services Law § 366 (2) (b) (2) (iii), to conform to the federal law.
A condition of these self-settled supplemental needs trusts, also known as “pay-back” trusts, is that upon the death of the beneficiary any remaining assets must be available to the State *640 to the extent the State has provided benefits. It is the “payback” requirement that petitioners find objectionable. Petitioners in the Mortimer matter argue that reformation of the original instruments to avoid payback should be permitted in the same manner as courts have allowed reformation to preserve various tax benefits. Their theory is that the law may assume a settlor would prefer the trust funds go to family members instead of the government.
The court rejects this argument. It is true the law will assume that a testator intends to take advantage of allowable tax deductions and exemptions (e.g. Matter of Lepore, 128 Misc 2d 250 [1985]; Matter of Choate, 141 Misc 2d 489 [1988]). Even accepting the dubious proposition, however, that a testator’s intention to take advantage of tax benefits is equivalent to a trust settlor’s desire to avoid repayment of medical benefits provided by the government, it must be recognized that reformations permitted for tax reasons are grounded on additional considerations besides the settlor’s presumed intent. The holdings in the tax cases rest on classic reformation principles, that is, to allow correction of drafting errors. The courts have tended to be liberal in permitting correction of omissions or other mistakes that cause loss of tax benefits, acknowledging that language necessary in the instrument to achieve the presumably desired tax benefit — language that has been described as “arbitrarily required”[2] —is highly technical and complex.[3] Indeed, the Internal Revenue Code and Treasury Regulations anticipate the need for reformation to achieve compliance with some of the rules for estate, gift, and income tax deductions.[4] In contrast, there can be no contention that the trusts in the cases at bar contain technical drafting errors. The considerations that have shaped the tax reformation cases are not applicable to these proceedings.
In accordance with the foregoing, the court denies the applications to reform the various trusts as requested. The court will, however, permit the guardians of the property of the respective beneficiaries to create self-settled supplemental needs *641 trusts in accordance with EPTL 7-1.12 (a) (5) (v), should they wish to do so. The request of petitioners in the Mortimer matter to reform the trusts to isolate Mr. Shields’s interest is denied as unnecessary in light of the balance of this decision.
The court acknowledges with gratitude the thoughtful analysis of Christopher Lagno, Esq., as guardian ad litem for Ms. Rubin, and of Morton Price, Esq., the guardian ad litem for Mr. Shields.
The court holds in abeyance the request to fix the fees of the guardian ad litem in the Mortimer matter, pending the conclusion of these proceedings.

. All of its other residents are Medicaid eligible and the facility explains that accepting a “private pay” client would create an administrative burden.

. 11-188 Warren’s Heaton, Surrogates’ Courts § 188.08 (2003).

. In Matter of Stalp (79 Misc 2d 412, 414 [1974]), Surrogate Sobel recognized that “[f]ew lawyers indeed were capable of drafting a qualifying charitable trust in conformity to the complex substantive provisions of the [Tax Reform Act of 1969].”

. See e.g. Internal Revenue Code (26 USC) § 2055 (e) (3) (providing in certain circumstances for recognition, for tax purposes, of reformations allowed under state law).