OPINION OF THE COURT
Eugene E. Peckham, S.
*616 NET Bank, as trustee of the trust created by the will of Henry N. Kamp for the benefit of his son, Henry A. Kamp, petitions for reformation of the trust into a supplemental needs trust under EPTL 7-1.12. The present corpus of the trust is $187,260.57. The will of Henry N. Kamp was executed May 17, 1977 and he died on September 8, 1982. Henry A. Kamp (hereafter Henry) was born July 4, 1955 and is mentally retarded. His cousins, Thomas H. Kamp and Colleen S. Kamp, were appointed by this court as his guardians under SCPA article 17-A on September 13, 2000. A guardian ad litem was appointed for Henry in this proceeding and his report recommends that the relief requested in the petition should be granted.
The original trustee of the trust was Frank X. Kamp, brother of Henry N. Kamp, but he died on January 16, 2002 and NBT Bank was appointed successor trustee. During the time Frank Kamp acted as trustee for his nephew, Henry received only Social Security disability income, but was not covered by Medicaid or any other program where his income or assets were restricted. Following the death of Frank Kamp, Henry was enrolled in a Medicaid funded day treatment program. Because the trust is not considered an exempt resource, Henry is ineligible for Medicaid funding for the day treatment program.
Effective July 26, 1993 with the passage of chapter 433 of the Laws of 1993, it is the policy of the State of New York to authorize and encourage supplemental needs trusts for disabled and retarded persons. The Legislature declared its intent in the following words:
“This act is intended to provide a legislative framework for the use of trusts to meet the supplemental needs of persons with disabilities whose basic needs are expected to be met, in large part, through government benefits or assistance programs. The purpose of the legislation is to encourage future care planning by instilling greater confidence in families and friends of persons with disabilities that the trusts they establish for recipients of government assistance will be used for the purposes they intend. This act is intended to benefit individuals with a wide variety of disabilities including, but not limited to, mental illness and developmental disabilities.” (L 1993, ch 433, § 1.)
Perhaps even more significant the Governor in his memorandum on the bill pointed out that encouraging supplemental needs trusts is a benefit to everyone, including the State, de *617 spite the potential loss of reimbursement to the Medicaid program.
“Arguably, everyone, including the State, can only benefit . . . [F]amilies play a multitude of roles in their relatives’ lives, in many ways analogous to an intensive case manager. By providing a mechanism which permits families to express on-going personal concern and provide supplemental support for a person with disabilities, the State is bolstering the ability of families to help their relatives access services, maintain a better quality of life and, in some cases, remain in the community and more in the mainstream with all the attendant societal and financial benefits. In conjunction with educational efforts and program development, this legislation should help facilitate future care planning efforts for disabled individuals throughout the State.” (1993 NY Legis Ann, at 314.)
The 1993 law enacted EPTL 7-1.12 which authorizes and sets forth the rules for supplemental needs trusts, including model language for such trusts. The same law also enacted section 104 (3) of the Social Services Law which provides that “no action may be brought against either the trust or the trustee to recover the cost of assistance or care provided to such person . . ..”
Even before the enactment of EPTL 7-1.12, the Court of Appeals had held by affirming Matter of Escher (94 Misc 2d 952 [Sur Ct, Bronx County 1978], affd 75 AD2d 531 [1980], affd 52 NY2d 1006 [1981]) that a discretionary trust created in a will did not have to be invaded to reimburse the State for the care of a mentally disabled person in a psychiatric hospital. Surrogate Gelfand in his decision below explained that public assistance has become the right of the physically and mentally disabled, particularly in light of the extremely high cost of such care in the modern day. The Surrogate stated in language that still resonates today:
“The cases presume that a person would prefer paying for the needs of those dear to him in lieu of welfare contributing thereto. Since the expression of this philosophy, public assistance has evolved from being a ‘gift’ into a ‘right’ which must be provided by State and local governments to all who show need, without even regard to the capacity of their respective taxpayers to generate the required *618 revenue to pay the mounting cost of this right . . . Public assistance programs have expanded from classic ‘welfare’ to prevent a party from becoming destitute into a multitude of social insurance programs designed to meet the peculiar needs of the ill, the aged, the disabled, and the handicapped. In the context of modern society, the stigma attached to receiving the benefits of these programs has largely disappeared, particularly with reference to those programs designed to meet the astronomical cost of illness or institutional care of any sort.
“Today, programs to pay medical and institutional care are viewed more as an insurance benefit than charity. In view of the vast costs involved, it is a benefit which logic suggests that most citizens would seek for their loved ones, should they require institutional care, in preference to rapidly expending their total assets before seeking the benefits of such programs. It is divorced from the realities of life to presume that if testator were aware of the facts as they now exist, he would desire to pay the immense cost for his daughter’s care in preference to having society share this burden. To apply to these facts a conclusion that the testator would find accepting benefits to be a repugnant humiliation at becoming the object of charity is an anachronism.” (94 Misc 2d at 959 [citations omitted].)
Further, the Governor stated in his memorandum on the Laws of 1993:
“Since Escher, the courts have generally held that a trustee of a third party trust, that is, one created by someone other than the beneficiary, will not be required to invade a properly drafted discretionary trust to pay medical expenses which would otherwise be paid by the government. In addition, such trusts are not considered available assets for purposes of computing the income beneficiary’s eligibility for Supplemental Security Income and Medicaid benefits so long as the beneficiary does not have the ‘right, authority or power to liquidate the property or his share of the property,’ and, for purposes of Medicaid, the creator of the trust is someone other than the beneficiary or his or her spouse.” (1993 NY Legis Ann, at 312 [citations omitted].)
The testamentary trust for Henry is such a third-party trust created by his father in his will. Henry has no right or power to *619 liquidate the trust or reach its assets. As with Escher, invasion of principal for Henry’s benefit is discretionary with the trustee. However, the distribution of income from the trust is not discretionary, as Henry is entitled to receive all the income from the trust at least annually. This income payout is sufficient to disqualify Henry from Medicaid.
The question thus presented is whether the Kamp trust can be reformed into a supplemental needs trust where the payout of both income and principal would be discretionary with the trustee?
As is well known, the overriding principle in the interpretation of wills is the intention of the testator. (Matter of Fabbri, 2 NY2d 236 [1957].) Clearly, Henry N. Kamp knew his son Henry was retarded and intended to provide for him, even to the exclusion of his other children. His will left his entire residuary estate to the trust for Henry, with remainder to testator’s two other children and a contingent remainder to “[t]he Retarded Children’s Association of Broome County, New York” in the event of the death before Henry of both of testator’s other children.
Another overriding principle is that guardians must act in the “best interests” of their wards. (Matter of Caseres, 67 AD2d 630 [1st Dept 1979]; Matter of Pflueger, 181 Misc 2d 294, 303 [Sur Ct, NY County 1999]; Mental Hygiene Law § 81.20 [a] [2], [3]; § 81.22 [a] [8]; SCPA 1750, 1750-b [2].) Clearly, Henry will be better off if he has the benefit of governmental assistance for the costs of his care and treatment through Medicaid. Equally clearly it is in his best interests if the trust income and assets can be retained to supplement government benefits and provide Henry with clothing, uncovered medical care and recreation not otherwise provided by government programs for retarded citizens.
The intention of Henry N. Kamp to provide for his son is clear. The Kamp will was executed in 1977 before the Surrogate’s Court decision in Escher. Henry N. Kamp died in 1982 shortly after the Court of Appeals affirmance and well before EPTL 7-1.12 was enacted to codify supplemental needs trusts. What is not clear is whether we can presume that if he had known about supplemental needs trusts, Henry N. Kamp would have intended for his son to receive only discretionary distributions of income from the trust.
The court has been able to find only three cases that discuss the question of whether wills or trusts that predate the Escher *620 decision may be reformed into supplemental needs trusts. Two of those cases allowed the reformation. (Estate of Ciraolo, NYLJ, Feb. 2, 2001, at 31, col 4 [Sur Ct, Bangs County]; In re Hulett, Sur Ct, Cattaraugus County, Feb. 18, 1999, Index No. 28; 13 Warren’s Heaton, Surrogates’ Courts § 211.04 [1], at 211-8 [6th ed rev].) In Ciraolo the court reformed a bequest of one third of decedent’s residuaiy estate to a disabled infant into a supplemental needs trust.
On the other hand, Matter of Rubin (4 Misc 3d 634 [Sur Ct, NY County 2004]) involved two cases consolidated for decision. In one case, the court refused to reform a trust paying income to a severely disabled 52-year-old woman. In the other case, a developmentally disabled 53-year-old man was to receive a remainder distribution from three trusts created by his grandmother due to the death of his mother, the income beneficiary. The court refused to reform the various trusts into supplemental needs trusts. The court based its holding on a strict reading of the rules relating to reformation of wills. The court stated reformation was only allowed to correct mistakes in the written instrument. The court also stated: “[R]eformation may not be used to change the terms of a trust to effectuate what the settlor would have done had the settlor foreseen a change of circumstances that has occurred.” (4 Misc 3d at 638.)
First, it is not at all clear that a court may not consider what the presumed intent of the settlor would be in changed circumstances — namely, whether Henry N. Kamp would have set up a supplemental needs trust for his son if he had known about them. As early as 1924 Judge Cardozo stated in a case where he reformed a will to comply with the old two lives rule on perpetuities: “The tests of presumable intention and probable desire will be commonly of greater potency than those that have their origin in the separation of the good from the bad by paragraph or sentence.” (Matter of Horner, 237 NY 489, 495 [1924].) Both Escher, quoted above, and the Court of Appeals decision in Shah, quoted below, took presumed intent into consideration.
Also significant is the line cases that holds the courts will presume a testator wishes to reduce taxes to the greatest extent possible and will reform the will to accomplish that result. (E.g. Matter of Stalp, 79 Misc 2d 412 [Sur Ct, Kings County 1974]; Matter of Lepore, 128 Misc 2d 250 [Sur Ct, Kings County 1985]; Matter of Choate, 141 Misc 2d 489 [Sur Ct, NY County 1988].)
Second, the Rubin case did not consider the clearly expressed intention of the Legislature discussed above to benefit persons *621 with disabilities by encouraging their families to create supplemental needs trusts. Nor did it consider the Governor’s memorandum stating that the State benefits by providing a mechanism for families to provide supplemental support to their disabled family members. As the Governor said: “[T]he State is bolstering the ability of families to help their relatives access services, maintain a better quality of life and, in some cases, remain in the community and more in the mainstream with all the attendant societal and financial benefits.” (1993 NY Legis Ann, at 314.)
Third, the Court of Appeals has clearly held that a guardian for a disabled individual has the right and power to engage in Medicaid planning for the ward. (Matter of Shah, 95 NY2d 148 [2000]; Matter of John XX., 226 AD2d 79 [3d Dept 1996], lv denied 89 NY2d 814 [1997].) In Shah the Court of Appeals authorized the wife and guardian of a man in a permanent coma to transfer all of his assets to her to allow him to qualify for Medicaid and also so she could provide for herself and their children. In reaching its holding the Court of Appeals considered Mr. Shah’s presumed intention. It said: “There can be no quarreling with the Supreme Court’s determination that any person in Mr. Shah’s condition would prefer that the costs of his care be paid by the State, as opposed to his family.” (95 NY2d at 160.) The request to reform the Kamp trust into a supplemental needs trust is stated in the petition to be for the purpose of allowing Henry to qualify for Medicaid, which is in effect Medicaid planning. Thus, the policy of the State as established by the Court of Appeals favors planning to permit disabled individuals to secure the financial benefits of Medicaid, while retaining supplemental income and assets.
Fourth, article 81 of the Mental Hygiene Law adopts the doctrine of substituted judgment whereby a court can substitute its reasoned judgment for what the disabled individual would have decided if able, e.g., the presumed intent of the disabled person. (Mental Hygiene Law § 81.21 [e]; Matter of Shah, supra at 158-160; Matter of Pflueger, supra.) Since the powers of an article 17-A guardian are ill defined (SCPA 1761, 1723), the doctrine of substituted judgment adopted in article 81 would also apply to analogous 17-A guardianships. The provision preventing the trust from being a supplemental needs trust is the required distribution of income to Henry. In this case, there also can be no quarreling that if he were able Henry would choose to have a supplemental needs trust for his benefit rather than have the *622 trust income utilized to reduce or eliminate his Medicaid benefits. If able, Henry could renounce his right to income thereby qualifying the trust as a supplemental needs trust. The court could likewise renounce the income for him by application of substituted judgment to achieve what would be in Henry’s best interests. The trust would continue due to the discretionary power given to the trustee to invade principal for Henry’s benefit. (EPTL 2-1.11.) This might trigger a look back period of ineligibility under the Medicaid rules (Social Services Law § 366 [5] [d]), but the trust would effectively be changed into a supplemental needs trust with discretionary invasion of principal for Henry’s benefit.
In the opinion of this court, the Rubin decision represents too narrow an application of the New York law on reformation of trusts. The presumed intention of the testator to take advantage of governmental benefits for his retarded son should be considered, and has been considered by the courts. The public policy of the State as expressed by the Legislature and the Governor authorizes and encourages third-party supplemental needs trusts as first permitted by the Escher decision. The Court of Appeals in Shah established that public policy permits Medicaid planning in the best interests of disabled or retarded citizens. Reformation in this type of case is an example of Medicaid planning. Permitting the Kamp trust to be reformed into a supplemental needs trust accords with public policy recognized and encouraged by all three branches of government. In this regard it is significant to note the Broome County Department of Social Services was cited in this proceeding and neither appeared nor objected.
For all the foregoing reasons, this court agrees with the Ciraolo decision and respectfully disagrees with Rubin. The petition is granted. The court holds that the best interests of Henry A. Kamp will be promoted by reforming the trust created by his father into a supplemental needs trust for his benefit.